## Case No. 7,840.

### KIRKBRIDE v. LAFAYETTE COUNTY.

[9 Chi. Leg. News, 94.]

Circuit Court, W. D. Missouri. Nov., 1876.[1]

THE TOWNSHIP RAILROAD ACT—SUBSCRIPTIONS ON BEHALF OF TOWNSHIPS VOID—BONDS IN HANDS OF INNOCENT HOLDERS — LOCATION OF ROAD—DUTY OF INNOCENT HOLDERS — ACT UNCONSTITUTIONAL.

1. Under the decision of the supreme court of the United States, all subscriptions made by counties for and on behalf of townships are void.

2. The township act requires the road to run "into, through, or near such township," and unless it does so run, there would, even if the law was constitutional, be no authority in the township to subscribe, and innocent holders of bonds purchased for a valuable consideration, were bound to see that they were issued to a road which ran "into, through or near such township."

3. The supreme court of the United States having declared the act unconstitutional, because it provided that a subscription should be made if two-thirds of the voters voting should vote in favor of it, while the constitution required two-thirds of all the voters of the township. *Held*, the fact that the officers have certified that two-thirds of all the voters of the township have voted in favor of the subscription, does not validate the act.

[This was an action by Jonathan Kirkbride to enforce the payment of certain interest coupons on bonds, issued by the county of Lafayette.]

Ewing & Smith, for plaintiff.
Rathburn & Graves, for defendant.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

KREKEL, District Judge. Plaintiff sues on coupons detached from Lafayette county bonds. It appears that in May, 1868, twenty-five tax-payers of Lexington township, in said county, petitioned the county court to order an election of the qualified voters of the township to determine whether a subscription of $75,000 should be made to the capital stock of the St. Louis and St. Joseph Railroad, a corporation which before that time had been organized under the general laws of the state; that an election was held and 330 votes cast for the subscription, and 16 against it; that the county court on return thereof, "being satisfied that two-thirds of the qualified voters of said township, who voted at said election, did vote in favor of said subscription, and this court being further satisfied from the certificate of said clerk, and otherwise, that two-thirds of the

[1] [Reversed in 108 U. S. 208, 2 Sup. Ct. 501.]

qualified voters of said township have given their assent thereto," on the 7th day of July, 1868, subscribed stock to the amount set out in the tax-payers' petition and on the conditions therein specified, the court appointing Judge Scholfield, the presiding justice, to make the subscription, which he reports to have done on the 8th day of July following; that $37,000 of said bonds were delivered to the railroad company on the 2d of November, 1868; that on the 2d day of March, 1869, the court appointed one Letton, agent of the county, "to cast the vote of the county and represent her interest in the St. Louis & St. Jo. Railroad Company, and to receive the bonds of said county when issued, and hold the same until said company comply with the conditions of their contract;" that the balance of said bonds were issued on the 18th day of March, 1869, and delivered to agent Letton.

It further appears from the evidence that the St. Louis and St. Joseph Railroad Company was organized on Jan. 8, 1868, for the purpose of building a railroad from Richmond, in Ray county, by way of Plattsburg to St. Joseph, in Buchanan county; that Richmond is nine miles from Lexington township, and on the opposite side of the Missouri river; that another corporation known as the St. Louis and St. Joseph Railroad Company, Southern Division, was organized under the general laws of the state on the 10th day of August, 1868, to construct a railroad from Richmond to a point on the bank of the Missouri river opposite Lexington, which road was so constructed, and is now in operation. The bonds are issued by, and in the name of, the county of Lafayette, promising to pay the St. Louis and St. Joseph Railroad Company or bearer, reciting that they are issued under and pursuant to an order of the county court of Lafayette county, by authority of an act of the general assembly of the state of Missouri, approved March 23, 1868, entitled "An act to facilitate the construction of railroads in the state of Missouri," and authorized by a vote of the people, taken May 23, 1868. Whatever may have been the power of the county of Lafayette to subscribe stock under the general railroad law, and the constitution of Missouri in a railroad outside of, and not touching the county, is unnecessary to determine, for the bonds from which the coupons sued on have been detached, upon their face show that they were issued under the act of 23d March, 1868, known in Missouri as the "Township Railroad Act." The question is, had the county for, and on the account of a township the power under the act last named to subscribe stock and issue bonds in payment? The section of the township act under which the tax-payers applied for the vote to be taken provides that "whenever twenty-five persons, tax-payers and residents, in any municipal township for election purposes, in any county in this state, shall petition the county court of such county, set-

ting forth their desire, as a township, to subscribe to the capital stock of any railroad company in this state, building or proposing to build a railroad into, through, or near such township, and stating the amount of such subscription, and the terms and conditions on which they desire such subscription shall be made, it shall be the duty of the county court, as soon as may be thereafter, to order an election to be held in such township, to determine if such subscription shall be made; which election shall be conducted and returns made in accordance with the law controlling general and special elections; and if it shall appear, from the returns of such election, that no less than two-thirds of the qualified voters of such township voting at such election are in favor of such subscription, it shall be the duty of the county court to make such subscription in behalf of such township."

It will be observed that under the provision of this law, the railroad to which a subscription is authorized to be made, must be "building or proposing to build a railroad into, through or near such township." The starting point of the railroad to which the subscription was made is from Richmond, on the opposite side of the Missouri river, nine miles away from the nearest point of Lexington township or county. The corporation organized to build that road, so far as the articles of association are concerned, never contemplated building their road into, through or near Lexington township. Lexington township could therefore have no interest in subscribing to this road. It could derive no benefit from this road which it did not already possess through the North Missouri railroad, unless it be an indirect connection with St. Joseph, too remote an object to be taken into account. In this it differs from the case [Von Hoxtrup v. Madison City] 1 Wall. [68 U. S.] 291, cited by plaintiff's counsel, the object as viewed by the court in that case being to connect a distant point by way of a road already built. But it may be said that the object of the subscription was to connect the city of Lexington, and Lexington township through it, with the St. Louis & St. Joseph & North Missouri Railroad at Richmond, and there is evidence tending to show that to have been the case. The petition asking submission, the vote taken, and the order subscribing, were all prior to July 8, 1868, at which time the Southern division, intended to make the connection, had no existence, it having been incorporated August 16, 1876. So that the subscription was to the original road, and not the Southern division thereof. The bonds themselves, on their face, show that they were issued to the St. Louis & Lexington Railroad, and not the Southern division thereof. The township railroad law requires the road to run "into, through, or near such township," and unless it does so run, there seems to be no authority in the township to subscribe. Richmond, the terminus of the St. Louis & St. Joseph Railroad, nine miles away from the nearest point to Lexington township or Lafayette county, with a navigable river between them, cannot be said to be near said township or county, therefore legal authority was wanting to make the subscription and issue the bonds.

The supreme court of the United States in a late case (Harshman v Bates Co. [92 U. S. 569]) has called attention to the distinction between the constitutional provision requiring "two thirds of the qualified voters of such county, city or town," and the provision of the township act cited, which requires "two-thirds of the qualified voters of such township voting at such election," and intimated that for this conflict the act might be declared unconstitutional. In the case under consideration, the county court not only ascertained that two thirds voting at the election voted for the subscription, but also that the number voting favorably constituted two-thirds of the qualified voters of the township.

The judge delivering the opinion of the court in the case cited, also intimates that a township, a mere political subdivision of a county, could not be constituted a corporate body by the legislature under the constitution of Missouri, which enumerates counties, cities or towns, so as to avoid the requirements of the constitution regarding subscriptions. If this be the opinion of the supreme court it would seem that all subscriptions made by counties for and on behalf of townships would be void.

The remaining question in the case under consideration to determine is: Whether an innocent holder for value is bound to ascertain at his peril whether the bond he purchases, if issued under the township act, was issued to a road which ran "into, through or near such township." It would seem to be his duty, as upon this the authority to subscribe and issue bonds in the payment depends. Dill. Mun. Corp. § 425; 11 Ohio, 183. This is a legal provision and differs from conditions upon which subscriptions are made. In the latter class of cases the issuing of the bonds has been uniformly held to imply that the conditions agreed upon between the parties before their issue have been fulfilled or waived. For want of legal authority to issue the bonds, the coupons do not constitute a legal indebtedness. Judgment will therefore be rendered for defendant.

DILLON, Circuit Judge. Without expressing any opinion whether there was a want of power to issue the bonds on the ground that the railroad company to which the subscription was made and the bonds issued was not one whose line of road was "near" to the township; or if it be not "near" the township, whether, under the recital in the bond, this fact could avail to defeat a recovery by a bona fide holder for value, I concur in the

result on the ground that the case is controlled by Harshman v. Bates Co. [supra], decided by the United States supreme court, at the October term, 1875. The judgment of the court in that case held the act of March 23, 1868, recited in the bonds as the authority for their issue, unconstitutional, and this is the only act authorizing township bonds, like these here in suit, ever passed by the general assembly of Missouri. The circumstance in this case, that two-thirds of all the voters of the township did in fact vote for the subscription, is without legal significance, and cannot have the effect to validate the act of March 23, 1868, in respect to the matter, in which the supreme court holds it to conflict with the constitutional requirement.

Judgment for the defendant.

[NOTE. From this decision the plaintiff took the case to the supreme court on writ of error. The judgment was there reversed in an opinion by Mr. Justice Harlan. 108 U. S. 208, 2 Sup. Ct. 501. It was held that there was but a single question involved, viz. whether there was legislative authority for the issue of bonds. "The word 'near' is relative in its signification," and the meaning of the word must depend upon the circumstances of each case. "As between the township and a bona fide holder for value, * * * the courts should acquiesce in the determination by the qualified voters and the local authorities that the road in question was near to Lexington township." Von Hoxtrup v. Madison City. 1 Wall. (68 U. S.) 291; Myer v. Muscatine, Id. 384, cited with approval.]